UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE CHIMELIS, <br><br> Plaintiff, <br><br> -against- <br><br> COUNTY OF SUFFOLK, POLICE OFFICER PETER ALVAREZ, POLICE OFFICER "JOHN" IANONNE, and SERGEANT MICHAWEL ALFERI, <br><br> Defendants. | **MEMORANDUM AND ORDER** <br> Case No. 2:21-CV-7079 |

*Appearances:*
*For the Plaintiff:*
ALBERT DARNELL MANUEL, III
COBIA MALIK POWELL
FREDERICK K. BREWINGTON
Law Offices of Frederick K. Brewington
556 Peninsula Boulevard
Hempstead, NY 11550

LEAH ELIZABETH JACKSON
Lieb at Law
308 W. Main Street
Smithtown, NY 11787

*For the Defendant:*
CALLAN WRIGHT TAUSTER
STACY A. SKORUPA
Suffolk County Department of Law
100 Veterans Memorial Highway
Hauppauge, NY 11788

**BLOCK, Senior District Judge:**

In this civil rights action, Plaintiff Anne Chimelis ("Plaintiff") brings federal and state law claims against the County of Suffolk (the "County") and three individuals: Suffolk County Police Officer Peter Alvarez ("Alvarez"), Officer John Ianonne ("Ianonne"), and Sergeant Michael Alferi ("Alferi") (collectively, "Police

1

Defendants"). The County and Police Defendants (collectively, "Defendants") move for summary judgment on all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. In addition to Plaintiff's assault and battery state law claim against them, Police Defendants face three federal claims under 42 U.S.C. § 1983: (1) false arrest violating the Fourth Amendment; (2) retaliatory arrest violating the First Amendment; and (3) excessive force violating the Fourth Amendment.[1]

Summary judgment is appropriate only if the pleadings, the discovery materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the burden of establishing that no genuine issue of material fact exists." *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (cleaned up). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The Court must thus "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary

---

[1] Plaintiff has voluntarily withdrawn multiple claims in her memorandum of law opposing Defendants' motion: (1) false imprisonment, Pl.'s Opp'n at 9 n.1, ECF No. 48-15; (2) abuse of process, *id.* at 14 n.2; (3) fabrication of evidence, *id.*; (4) negligent infliction of emotional distress, *id.*; (5) intentional infliction of emotional distress, *id.*; and (6) *Monell* liability, *id.* at 23. Only claims against Police Defendants remain because Plaintiff has dropped *Monell* liability, required "to hold a city liable under § 1983 for the unconstitutional actions of its employees." *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

2

judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). "The party seeking summary judgment on the basis of qualified immunity bears the burden of proof" on the defense. *Soukaneh v. Andrzejewski*, 112 F.4th 107, 116 (2d Cir. 2024).[2]

For the following reasons, the motion is DENIED.

# I

The facts are taken from the pleadings, the parties' Rule 56.1 statements, and supporting documentation, including an approximately sixteen-minute video of the incident recorded by a third party. *See* Video, ECF No. 48-7. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See Capital Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025). As will be seen, the material facts are largely in dispute, precluding summary judgment on each of Plaintiff's claims.

"On October 17, 2020, Plaintiff and her child attended a gathering of the North Country Peace Group" at an intersection "in Setauket, New York." Pl.'s 56.1 Statement of Disputed Facts in Opp'n to Defs.' Mot. and Counter Statement of Facts at ¶ 2, ECF No. 48-14 [hereinafter, "SOF"]. Most "members of the North

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Country Peace Group and Black Lives Matters protestors" occupied one side of the road, while many "supporters and followers of [] President Donald Trump" ("Trump") gathered on the opposite side. *Id.* at ¶ 3. At some point, a vehicle caravan of Trump supporters drove down the road and stopped at the intersection. *Id.* at ¶ 9.

Then, a Trump impersonator exited the vehicle that led the caravan. *Id.* at ¶ 6. There were no police vehicles in the intersection at that time. *Id.* at ¶ 9. However, Plaintiff asserts that she saw a police car in a parking lot adjacent to the intersection upon arriving. Pl.'s Dep. Tr. at 16:24–18:10, ECF No. 48-6. Two protestors entered the intersection, with one holding a sign reading "Racism is not Patriotism." Video at 0:51; SOF at ¶¶ 8–9. The Trump impersonator and others who exited the caravan vehicles walked in the road, posing for pictures with Trump supporters and addressing protestors on both sides of the road. Video at 0:30–3:34. Officer Alvarez arrived after people entered the roadway to disperse the crowd, but nobody acknowledged his instruction. SOF at ¶ 73. Sergeant Alfieri and Officer Iannone arrived later. *Id.* at ¶¶ 69, 122.

Around that time, "Debbie Edwards[] was hit by a pick-up truck in the pro-Trump caravan." *Id.* at ¶ 5. Plaintiff entered the roadway to help her. Pl.'s Dep. Tr. at 22:2–4. The parties dispute whether a truck hit anyone. SOF at ¶ 91. At this point, Plaintiff stood around the front of the caravan with multiple other people

4

who held signs expressing views across the political spectrum. Video at 3:50. Members of the Trump caravan then "screamed at [Plaintiff] and other members of the North County Peace Group [in the roadway]. . . pushed people, and ripped the sign out of" Plaintiff's hands. SOF at ¶ 7; Video at 3:55. In response, and to help Edwards, Plaintiff sought assistance from officers around her, including Alvarez. SOF at ¶¶ 12, 70. Her efforts proved fruitless, as police ignored her. *Id.* at ¶ 13.

After about two minutes, Police Defendants instructed Plaintiff and Myrna Gordon ("Gordon"), a fellow North Country Peace Group member, to exit the road. *Id.* at ¶¶ 15–26, 54; Iannone Dep. Tr. at 18:25–19:9, ECF No. 48-10. Simultaneously, Plaintiff asked Police Defendants to control the crowd that had gathered in the road, including the pro-Trump protestor who had menaced her. SOF at ¶¶ 15, 24–25. Other people asked to leave the road initially dispersed but then reentered. Iannone Dep. Tr. at 19:24–20:10. The vehicle leading the caravan tried to move while people from the caravan and both sides of the road, including Plaintiff, occupied the road.[3] Video at 3:47. Later, its occupants again exited the car. *Id.* at 8:52. Many protestors from the caravan and both sides of the road

---

[3] Defendants allege that, at this point, "the Trump protestors had either re-entered the cars or left the roadways." SOF at ¶ 11. The video demonstrates otherwise. *See* Video at 3:53. "In certain circumstances, video evidence may be so clear and unambiguous that a court deciding a summary judgment motion . . . need not afford weight to conclusory or non-credible assertions that are inconsistent with the blatant video evidence." *Monahan v. City of New York*, No. 20-CV-2610, 2022 WL 954463, at *4 (S.D.N.Y. Mar. 30, 2022) (citing *Scott v. Harris*, 550 U.S. 372, 378-80 (2007)).

5

occupied the road from the time people reentered the leading car to the time of Plaintiff's arrest. *Id.* at 3:47–9:08.

After Plaintiff and Gordon refused to move multiple times, they were arrested. SOF at ¶¶ 16–18, 21–26. Alvarez arrested Gordon and then Iannone and Alfieri arrested Plaintiff. *Id.* at ¶¶ 164, 166. The parties dispute whether Alfieri had received instructions from his supervisor to begin arrests or if he made the decision himself. *Id.* at ¶ 100. Following Plaintiff's arrest, other protestors remained in the roadway. Video at 9:14.

When Iannone and Alfieri arrested and handcuffed Plaintiff, she experienced pain from her pre-existing shoulder injuries and in her wrists. SOF at ¶¶ 27, 31. The parties dispute whether Plaintiff conveyed her pain to the surrounding officers during her arrest and their response, if any. *Id.* at ¶¶ 33, 133. The parties also dispute who walked Plaintiff to the police car. *Id.* at ¶¶ 35, 134. Iannone then drove Plaintiff and Gordon to the precinct. *Id.* at ¶ 36. The parties dispute whether Alvarez was in the car. Alvarez Dep. Tr. at 46:14–47:5, ECF No. 48-6; Pl.'s Dep. Tr. at 59:15–60:5. Plaintiff, still in pain, asked Iannone to pull over and adjust her handcuffs, but he declined and told Plaintiff it was not protocol to do so. SOF at ¶¶ 37; 135. Iannone offered to take Plaintiff to the hospital, but she declined. *Id.* at ¶¶ 80, 135. The parties dispute whether Plaintiff complained of pain while in transport, aside from responding to Iannone's offer. *Id.* at ¶ 79.

6

It is disputed whether, upon arrival, Iannone or Alvarez removed Plaintiff from the vehicle. *Id.* at ¶¶ 38; 137. One of the officers "turned her around and 'with no warning,' released her handcuffs." *Id.* at ¶ 38. Plaintiff felt a "'burning pain' and described the feeling as her right arm 'dropped out of the socket.'" *Id*. The officer then adjusted Plaintiff's handcuffs and handcuffed her again. *Id.* at ¶ 39. Plaintiff was then placed in a holding room and "cuffed to a metal table with her hands in front of her," *id.* at ¶ 48, but her pain did not "go away," *id.* at ¶ 141. After approximately five hours, she was released with a desk appearance ticket. *Id.* at ¶ 50. Plaintiff subsequently sought and received medical treatment. *Id.* at ¶¶ 55–57, 59.

## II

### A. <u>False Arrest</u>

i.   *Substantive Claim*

The Fourth Amendment protects persons from warrantless arrests absent probable cause. *See D.C. v. Wesby*, 583 U.S. 48, 56 (2018). Probable cause is thus an absolute defense to a false arrest claim. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010). "Probable cause to arrest exists when the historical facts, viewed from the standpoint of an objectively reasonable police officer, provide knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been or is

7

being committed by the person to be arrested." *Rupp v. Buffalo*, 91 F.4th 623, 638–39 (2d Cir. 2024). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004). This inquiry is "objective rather than subjective" and does not probe a specific officer's intent. *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)

"Probable cause for a disorderly conduct violation under N.Y. Penal Law § 240.20 exists only where a reasonable person in the officer's circumstances would have believed that the person to be arrested acted with 'intent to cause public inconvenience, annoyance or alarm or with recklessness as to a risk thereof.'" *McClellan v. City of Rensselaer*, 395 F. App'x 717, 718 (2d Cir. 2010) (summary order) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001)).

Defendants argue that Police Defendants had probable cause to arrest Plaintiff for obstructing traffic under N.Y. Penal Law § 240.20(5) because she "deliberately and knowingly obstructed traffic . . . and refused the officers' instructions to leave the roadway despite being warned that refusal would lead to her arrest." Defs.' Mem. at 11, ECF No. 48-4. But probable cause cannot be determined here as a matter of law because the parties dispute whether a reasonable officer in Police Defendants' position could believe that Plaintiff intended to cause or recklessly created the risk of causing public harm.

8

Thus, there are issues of fact that preclude summary judgment, namely whether a reasonable officer would believe that Plaintiff entered the roadway "for the legitimate purpose" of seeking police assistance after a truck hit her friend and pro-Trump protestors menaced her and others near her. *Rupp*, 91 F.4th at 642 (echoing that jury might infer that plaintiff entered road "'for the legitimate purpose of getting the [] officer's attention, not to cause public inconvenience, annoyance or alarm'" (quoting *Provost*, 262 F.3d at 158)). A jury could also infer that Plaintiff did not recklessly obstruct traffic because the road was simultaneously occupied by drivers and occupants of the vehicles in the caravan, as well as protestors from both sides. And, prior to Plaintiff's arrest, a car was able to drive around her and the other people in the roadway. SOF at ¶ 44; Video at 5:11; *see Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (explaining that disorderly conduct violation only lies "where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic").

 ii. *Qualified Immunity*

Government actors may invoke qualified immunity to shield themselves from liability for civil damages "'when [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Soukaneh*, 112 F.4th at 115 (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). "Courts apply a two-step process in evaluating whether qualified

immunity applies: 'qualified immunity shields federal and state officials from money damages unless [the facts demonstrate] (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 246 (E.D.N.Y. 2023), *remanded on other grounds*, 2024 WL 2837618 (2d Cir. June 5, 2024) (quoting *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2008)). "Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999).

In defense to "a false arrest claim," officers may also invoke qualified immunity if "arguable probable cause" existed to make the arrest. *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022). "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

Police Defendants argue that they did not violate Plaintiff's clearly established right "to be free from arrest without probable cause," *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013), because probable cause justified her arrest. But qualified immunity cannot be granted as a matter of law since there are issues of fact that must be resolved, namely whether it was objectively

10

reasonable for an officer to believe that Plaintiff intended to cause or recklessly created the risk of causing public harm. *See Krause v. Bennett*, 887 F.2d 362, 365 (2d Cir. 1989) (explaining that question of "whether a reasonable police officer would have believed probable cause existed" is also "the decisive factor in the analysis of qualified immunity"). Those fact issues determine whether any objective officer in Police Defendants' position could believe that probable cause to arrest Plaintiff existed.

B. First Amendment Retaliation

i. *Substantive Claim*

Police Defendants argue that "the existence of probable cause" defeats Plaintiff's "First Amendment claim premised on the allegation that defendants arrested [] plaintiff based on a retaliatory motive." *Caravalho v. City of New York*, 732 F. App'x 18, 23 (2d Cir. 2018) (summary order) (quoting *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012)). As mentioned, probable cause is disputed. Even so, "while probable cause 'should generally defeat a retaliatory arrest claim,' a narrow exception exists where, even though officers have probable cause to make arrests, they 'typically exercise their discretion not to do so.'" *Wheeler v. Artola*, 852 F. App'x 589, 591 (2d Cir. 2021) (summary order) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019)). "A plaintiff can take advantage of this exception by presenting 'objective evidence that he was arrested when otherwise similarly

11

situated individuals not engaged in the same sort of protected speech had not been.'" *Id.* After showing such "objective evidence," "plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *Nieves*, 587 U.S. at 406–08.

Plaintiff has presented such evidence. At the time of Plaintiff's arrest, many other people occupied the roadway and obstructed traffic, including the driver of the vehicle at the front of the caravan. Many persons in the roadway signaled their political views, through signs, apparel, and words. But police only arrested those who protested the pro-Trump contingent. Plaintiff asserts that Police Defendants arrested her after labeling her a "leader" of the protest, if she was identified at all, whereas Police Defendants retort that they labeled her the "leader" of the obstruction. *See* SOF at ¶ 100; Pl.'s Opp'n at 10. Defendants also argue that Plaintiff "was only arrested when she entered the roadway" and refused to exit upon police instruction, but Plaintiff responds that many others who remained in the roadway were not arrested. Defs.' Mem. at 17; *see* Pl's Opp'n at 11–13.

There thus exists objective evidence that Police Defendants might have exercised their discretion not to arrest protestors who supported Trump. *See Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). A reasonable jury could find that this evidence triggers the *Nieves* exception and itself evidences retaliatory intent. *See Nieves*, 587 U.S. at 400, 406–08. If the exception is not triggered, the Court

12

could still not decide Plaintiff's retaliatory arrest claim as a matter of law because probable cause remains disputed, as discussed in section III(a)(i).

  ii. *Qualified Immunity*

Police Defendants also invoke qualified immunity on Plaintiff's retaliatory arrest claim, arguing that probable cause legitimized her arrest. Violation here of the clearly established right to engage in First Amendment speech free from retaliatory arrest hinges on disputes regarding probable cause and the *Nieves* exception's applicability. *See Nieves*, 587 U.S. at 406–08. As mentioned, Plaintiff has presented objective evidence from which a reasonable jury could infer that Police Defendants refused to arrest pro-Trump protestors. These competing inferences present an issue of fact. *See Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988) (affirming denial of summary judgment on qualified immunity on different First Amendment claim where "a rational jury could infer that [government actor] singled out [Plaintiff] out of dislike for what [she] had to say"). A jury must thus determine whether "objective evidence" supports the inference that Plaintiff was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407–08.

Even if the *Nieves* exception does not apply, Plaintiff's claim may still proceed if a jury finds that Police Defendants did not have probable cause to arrest Plaintiff. Because these disputes determine whether the officers "acted reasonably

13

under settled law in the circumstances," *Rupp*, 91 F.4th at 642, summary judgment is inappropriate here, *see Roach*, 165 F.3d at 143–44 (precluding summary judgment on qualified immunity where disputes prevented district court from determining whether officers violated underlying constitutional right).

### C. Excessive Force

i.   *Substantive Claims*

Defendants argue that Plaintiff's excessive force claim fails because probable cause existed for her arrest and Police Defendants only employed the minimal force necessary to arrest her. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Unique considerations apply in excessive force cases involving handcuffs. "In evaluating the reasonableness of handcuffing," courts may consider evidence: "(1) [that] the [arrestee's] handcuffs were unreasonably tight; (2) [that] the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) [of] the degree of injury to the [arrestee's] wrists." *Cugini v. City of New York*, 941 F.3d 604, 612–13 (2d Cir. 2019).

But "a court's reasonableness analysis is not limited to a factual checklist."[4] *Id.* at 613. "The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive. A plaintiff satisfies this requirement if either the [objective] unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Id.*; *see Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (summary order) (explaining that officer knowledge of plaintiff's preexisting injury could render force used objectively unreasonable).

Defendants ask the Court to make impermissible credibility determinations regarding "what transpired during and after [Plaintiff's] handcuffing" that preclude summary judgment on this claim. Defs.' Mem. at 23. Relying on testimonial evidence, Defendants dispute who handcuffed Plaintiff, whether Police Defendants heard her complaints of pain and requests to adjust her handcuffs, whether they knew of her preexisting injury, the degree of force used, and the severity of Plaintiff's resulting injuries.[5] *See id.* at 23–24; SOF at ¶¶ 106, 116, 132–34, 141;

---

[4] Even handcuffing cases require courts to balance, in determining reasonableness, "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Cugini*, 941 F.3d at 612. The Court focuses considerations unique to handcuffing cases because Defendants center their motion on such arguments.

[5] Police Defendants direct the Court to video evidence to "support the officers' accounts of the events." Defs.' Mem. at 24. But the Court cannot assess credibility on summary judgment. Regardless, the video does not clearly depict who walked Plaintiff to the police car.

15

Pl.'s Dep. Tr. at 90:2–91:7. These credibility disputes are material. *See, e.g.*, *Ikezi v. City of New York*, No. 14-CV-5905, 2017 WL 1233841, at *13–14 (E.D.N.Y. Mar. 31, 2017) (precluding summary judgment where "Plaintiffs asked the officers to handcuff them in front of their bodies instead of behind their backs because they had shoulder injuries" but officers refused); *Pelayo v. Port Authority*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) ("Plaintiff's testimony about the injuries and subsequent treatment alone is sufficient to support an excessive force claim on a motion for summary judgment."); *Owens v. Colburn*, 860 F. Supp. 966, 972–73 (N.D.N.Y. 1994), *aff'd*, 60 F.3d 812 (2d Cir. 1995) (noting that dispute "as to whether a police officer had actual knowledge of a plaintiff's [preexisting] shoulder injury" precludes summary judgment on handcuffing claim). A jury must thus resolve these credibility disputes at trial. *Reeves*, 530 U.S. at 150. The same result holds even if probable cause was not in dispute. *See Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (explaining that "use of excessive force is impermissible even during a lawful arrest").

    ii.    *Qualified Immunity*

Police Defendants then assert qualified immunity for Plaintiff's excessive force claim because they contend that there is no "clearly established law holding that it is an unreasonable use of force to handcuff suspects pursuant to normal handcuffing procedures after they notify law enforcement officers that they have

16

injuries that would be exacerbated by such handcuffing." *Ikezi*, 2017 WL 1233841 at *16. But since *Ikezi*, the Second Circuit has clearly established the right to be free from "force that [officers] should know is unreasonable based on the arrestee's manifestation of signs of distress." *Cugini*, 941 F.3d at 617. This right was clearly established at the time the events underlying Plaintiff's case occurred. The Second Circuit decided *Cugini* in October 2019, and the events here occurred in October 2020.

*Cugini* places "the lawfulness of the particular [action] beyond debate," *Wesby*, 583 U.S. at 64, and applies "with obvious clarity to the specific conduct in question," *Steele-Warrick*, 671 F. Supp. 3d at 247 (quoting *Matzell v. Annucci*, 64 F.4th 425, 439 (2d Cir. 2023)). It should be clear to "every reasonable official" that manifestations of distress, including those caused by preexisting injuries, could render unreasonable force that is reasonable in other circumstances. *Wesby*, 583 U.S. at 63. That is especially true because, in setting the standard for handcuffing cases, *Cugini*, 941 F.3d at 612, the Second Circuit cited a case that involved the aggravation of a preexisting injury by otherwise-reasonable force, *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009) (explaining that "[h]ad the Officers known of a preexisting injury or medical condition that would have been aggravated by handcuffing . . . the Officers certainly would have been obligated to consider that information" in deciding whether to handcuff plaintiff). Courts in this

17

circuit have applied *Cugini* to cases where preexisting injuries render ordinary handcuffing unreasonable.[6] Other circuits agree that such force is unreasonable.[7] *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 61 (2d Cir. 2014) (recognizing that law could be clearly established where decisions of "other circuits and . . . our own Court foreshadowed the right").

Thus, the right Plaintiff invokes is clearly established with sufficient "specificity." *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Further, the identified factual disputes prevent the Court from determining whether an objectively reasonable officer would believe that his actions did not violate that right. *See Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("There may be factual disputes overlapping the excessive force and qualified immunity issues that the jury must find."); *Roach*, 165 F.3d at 143–44. The Court therefore cannot decide qualified immunity as a matter of law. Drawing all inferences in Plaintiff's favor, the Court

---

[6] *See, e.g.*, *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2024 WL 1345296, at *9 (E.D.N.Y. Mar. 30, 2024) (denying summary judgment on excessive force claim where "reasonable jury could find that Detective Dezelic's actions exacerbated [plaintiff's] pre-existing injury"); *Baker v. City of New York*, 551 F. Supp. 3d 258, 267–69 (S.D.N.Y. 2021) (applying *Cugini* to deny summary judgment on excessive force claim where plaintiff told handcuffing officers of prior injury and complained about handcuffs).

[7] *See, e.g.*, *Rodriguez v. Farrell*, 280 F.3d 1341, 1353–54 (8th Cir. 2002) (explaining that "what would ordinarily be considered reasonable force" becomes excessive force when it "aggravates (however severely) a pre-existing condition the extent of which" was known to handcuffing officer); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir.1993) ("An excessive use of force claim could be premised on [the officer's] handcuffing [the plaintiff] if he knew that she had a[] [previously] injured arm and if he believed that she posed no threat to him."), *superseded by court rule on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

18

denies summary judgment on Plaintiff's excessive force and assault and battery claims.

### D. Assault and Battery

Police Defendants argue that probable clause defeats Plaintiff's state law assault and battery claim against them. But probable cause is disputed. "Where an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Palmer v. City of New York*, 564 F. Supp. 3d 221, 247 (E.D.N.Y. 2021). The probable cause dispute thus itself precludes summary judgment on Plaintiff's assault and battery claim.

### III

### A. Alvarez's Personal Involvement

The parties dispute Alvarez's involvement. Police Defendants assert that Alvarez did not have any interaction with Plaintiff besides riding in the police car with her to the station and telling her to leave the car upon arrival. *Id.* at ¶¶ 76–78; Alvarez Dep. Tr. at 51:11–16.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Alvarez contends that he did not

participate in Plaintiff's arrest or handcuffing and was not the target of Plaintiff's complaints. Alvarez Dep. Tr. at 48:12–49:5; 55:18–24; 62:16–21. Plaintiff presents a diametrically opposed account of the events. Pl.'s Opp'n at 4–5, 14. These directly conflicting accounts present credibility disputes properly resolved at trial. *Reeves*, 530 U.S. at 150. Accordingly, a jury must decide whether Alvarez's involvement warrants exposure to liability under § 1983.

## IV

Accordingly, Defendants' motion for summary judgment is DENIED in its entirety.

**SO ORDERED.**

                                                  /S/ Frederic Block
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
February 11, 2024